IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

ROGER HOSCHAR AND
JUDY HOSCHAR,

            Plaintiffs,

v.                              CIVIL ACTION NO. 3:11-00152

APPALACHIAN POWER
COMPANY AND INDUSTRIAL
CONTRACTORS, INC.,

            Defendants.

**MEMORANDUM OPINION AND ORDER**

On January 31, 2011, Plaintiffs Roger and Judy Hoschar filed an action in the Circuit Court of Mason County, West Virginia against Defendants Appalachian Power Company and Industrial Contractors, Inc. to recover for alleged work-related injuries. Service was received by Defendants on February 8, 2011. On March 9, 2011, Defendants removed the action to this Court based upon diversity of citizenship. Thereafter, Plaintiffs filed a Motion to Remand and for Expenses [doc. no. 4], claiming that diversity does not exist. For the following reasons and on the record presented, the Court **DENIES** Plaintiffs' motion.

Pursuant to 28 U.S.C. § 1332(a)(1), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Where original jurisdiction exists, "any civil action brought in a State court . . . may

be removed by . . . the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a), in part. In this case, Plaintiffs do not challenge that the amount in controversy in this matter exceeds $75,000. It also is undisputed that Plaintiffs are residents of West Virginia and Defendant Industrial Contractors, Inc. is an Indiana corporation with its principal place of business in Indiana. Plaintiffs and Defendants further agree that Defendant Appalachian Power is incorporated in Virginia. However, Plaintiff asserts Appalachian Power's headquarters and principal place of business are located in Charleston, West Virginia. On the other hand, Appalachian Power insists its headquarters and principal place of business are in Columbus, Ohio. If Plaintiffs are correct, diversity is destroyed, and this case must be remanded to state court. If Defendants are correct, the case will proceed here.

This precise issue was recently raised in *Johnson v. Verizon South, Inc.*, No. 2:09-1169 (S.D.W.V.), before the Honorable Thomas E. Johnston, who presides in this district.[1] In that case, counsel for plaintiffs, who also serves as counsel in this matter, conducted a deposition of Mark Dempsey, Vice President of External Affairs for Appalachian Power, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. After taking Mr. Dempsey's deposition on June 30, 2010, counsel filed a motion to remand in *Johnson*, arguing that diversity does not exist as Mr. Dempsey's testimony demonstrates that Appalachian Power's headquarters and principal place of

---

[1] The case originally was assigned to the Honorable David A. Faber, but was reassigned to Judge Johnston on November 10, 2010.

business are located in West Virginia.[2]  The case settled, however, before a decision on the remand motion was rendered by Judge Johnston.  Thus, the issue was not resolved.

As the exact same issue arises in this case, Plaintiffs attached a copy of Mr. Dempsey's deposition from *Johnson* to their current Motion to Remand and for Expenses.  Apparently believing that sufficient evidence already exists in support of their positions, neither side has asked for discovery on the issue in this case.  Therefore, the Court will resolve the motion based upon the parties' submissions.

Section 1332(c) provides that for diversity purposes "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business[.]" 28 U.S.C. § 1332(c).  In *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010), the United States Supreme Court recently clarified the standard to be applied to determine the principal place of business of a corporation.  The Supreme Court stated "that the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities[,] . . . often metaphorically called . . . [the] corporation's 'nerve center.'" 130 S. Ct. at 1186.  In practice, the Supreme Court explained, a corporation's "principal place of business" normally is "where the corporation maintains its headquarters-provided that the headquarters is the actual center of direction, control, and coordination . . . ." *Id*. at 1192.  It is where the corporation's "brain" is located. *Id*. at 1193 (internal quotation marks omitted).

---

[2]The plaintiffs in *Johnson* also were residents of West Virginia.

The Supreme Court distinguished the "nerve center" test from the general business activities test, which was being employed by some courts. The general business activities test measures the amount of business a corporation conducts in a particular state. The state with the most business is deemed to be the corporation's principal place of business. The Supreme Court rejected this test as inviting more litigation and complexity to a court's analysis, with less predictability and sometimes strange results. *Id*. at 1193.

Illustrating the difference between the two tests, the Supreme Court stated that, for example, "if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York." *Id*. at 1194. The Supreme Court cautioned, however, that the "nerve center" must be more than a party attempting to manipulate jurisdiction by establishing a mailbox, an annual executive retreat center, or bare office with a computer in a particular location. *Id*. at 1195. Instead, it must be the where "actual direction, control, and coordination" occur. *Id*. Keeping these factors in mind, with the principle that the burden of persuasion for establishing diversity lies with Defendants in this case,[3] the Court turns to the evidence submitted by the parties.

In support of removal, Appalachian Power attached a copy of an affidavit by Mr. Dempsey, whose deposition was taken in the *Johnson* case. Mr. Dempsey avers that, while Appalachian Power has an office in Charleston, West Virginia, its principal place of business is

---

[3]*See id.* at 1194 (citations omitted) ("The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it.").

located in Columbus, Ohio. He asserts that all major decisions for Appalachian Power are made by its officers and/or directors located in Columbus, which includes: establishing a budget; deciding whether to incur debt and issue additional stock; controlling and directing filings made with the Security and Exchange Commission and the Federal Energy Regulatory Commission; maintaining the company's books and corporate records; collecting and disbursing revenues; deciding the location and construction of power plants and transmission lines; operating hydroelectric facilities, pump storage facilities, coal-fired power plants, and gas power plants; negotiating and executing contracts for the procurement of fuel for those generating plants; calculating and paying taxes owed on Appalachian Power's West Virginia facilities; negotiating and executing contracts to purchase fleet vehicles; determining human resource policies and codes of conduct; and handling environmental permitting of work for Appalachian Power's West Virginia facilities.

Plaintiff, however, argues that Mr. Dempsey's deposition in the *Johnson* case shows that Charleston is the "nerve center" of Appalachian Power. In his deposition, Mr. Dempsey stated that he lived and worked in Charleston, and so did Appalachian Power's most recent President, Dana E. Waldo. Mr. Waldo served as President for approximately five years until his retirement on May 31, 2010. Mr. Dempsey stated that the President's job responsibilities include controlling the budget assigned at the corporate level and directing the day-to-day operations of the company, such as overseeing line workers, safety, and communicating with employees and the public. It also includes administrative duties, assessing job performance, assigning goals, assisting in analyzing regulations, and handling regulatory filings and agencies.

On June 1, 2010, Charles Patton was elected President to replace Mr. Waldo. At the time of the deposition, Mr. Patton was splitting his time between Columbus and Charleston until he could find a place in Charleston to live.[4] Mr. Dempsey explained that the new President, Mr. Patton, actually works for American Electric Power (AEP) Service Corporation. AEP Service Corporation and Appalachian Power are separate corporate entities, but both companies are wholly owned subsidiaries of AEP. Although President of Appalachian Power, Mr. Patton also reports directly to Robert Powers, who serves as a Vice President for each individual AEP utility.

Mr. Dempsey further said he believed that all the officers for Appalachian Power, except for himself, were actually employees of AEP Service Corporation because they oversee various AEP affiliated entities in several states. For accounting purposes, this arrangement allows AEP Service Corporation to bill the various companies for work performed. Thus, customers in West Virginia, for instance, are not charged for something an officer may be doing for a company in Kentucky.

In a document attached as an exhibit and referred to throughout Mr. Dempsey's deposition, there are listed nine directors of Appalachian Power Company and approximately twenty-six different individuals serving as officers. Each of the directors listed also serves as an officer. Several individuals function as officers in more than one capacity. At his deposition, Mr. Dempsey stated that, of Appalachian Power's directors and officers, only himself, Phil Wright, and

---

[4]Plaintiffs submitted an article from The Charleston Gazette dated January 3, 2011, indicating that Mr. Patton was living in Charleston. Associated Press, *Apco's new president loves his job*, The Charleston Gazette, January 3, 2011.

Jeff LaFleur reside in Charleston.[5] As previously mentioned, Mr. Patton was in the process of moving to Charleston. In addition, Mr. Dempsey stated that another officer, Chris Potter, was in the midst of moving to the Charleston.[6] Thus, it appears that only five officers of Appalachian Power were stationed in the Charleston office.

Finally, although Appalachian Power's location in Charleston was referred to as its "headquarters," Mr. Dempsey explained it is somewhat of a misnomer. He stated that Charleston became known as Appalachian Power's headquarters because the former President, Mr. Waldo, lived here. However, duties such as setting the budget, financing, issuing stock, legal services, regulatory issues, and any citations for accidents and regulatory violations are all handled in Columbus, not Charleston.

In considering all this evidence, the Court finds this situation is similar to the illustration the Supreme Court gave in *Hertz*. As described earlier, the Supreme Court explained that merely because visible business activities are being performed in one State, that State is not the principal place of business under the "nerve center" test if those activities are being directed by officers in another State. *Hertz*, 130 S. Ct. at 1194. Likewise, in this case, it is clear that many of the day-to-day business activities of Appalachian Power are conducted in Charleston. However, Mr. Dempsey's affidavit and testimony establish that the ultimate decision-making power, which directs,

---

[5] Mr. Wright serves as Vice President of Distribution Region Operations, and Mr. LaFleur is Vice President of Appalachian Power Generating Assets.

[6] Mr. Patton recently began serving as Vice President of Regulatory Affairs and Business Operations with Appalachian Power.

controls, and coordinates the big-picture activities of Appalachian Power, is carried out in Columbus. Thus, the Court finds Defendant has presented sufficient evidence in this case to demonstrate that Columbus is the "nerve center" and principal place of business of Appalachian Power.

Accordingly, the Court finds that diversity jurisdiction exists in this case, and **DENIES** Plaintiffs' Motion to Remand and for Expenses.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:	May 3, 2011

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE