IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

ROGER HOSCHAR AND
JUDY HOSCHAR,

                Plaintiffs,

v.                                              CIVIL ACTION NO. 3:11-00152

APPALACHIAN POWER COMPANY
AND INDUSTRIAL CONTRACTORS, INC.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendant Appalachian Power Company's Motion for Summary Judgment, (ECF No. 88), and Defendant Industrial Contractors, Inc.'s Motion for Summary Judgment, (ECF No. 90). Because Plaintiffs' claims against Defendants share the same relevant facts, the Court will address both motions in a single opinion. For the following reasons, the Court **GRANTS** summary judgment in favor of Defendants.

                I.       FACTUAL BACKGROUND

Plaintiff[1] has lived in Mason County, West Virginia, for most of his life. Hoschar Dep. at 18-26, APC Mot. Summ. J., Ex. D, ECF No. 88-1. From approximately March 2006 to April 2007, Plaintiff was employed as a boilermaker for Industrial Contractors, Inc. ("ICI"). Hoschar Dep. at 100-01, Pl.'s Resp., Ex. 1, ECF No. 104-1. During that time he worked exclusively at the

---

[1] There are two plaintiffs in this case—Roger and Judy Hoschar. Judy's claim against Defendants is for loss of consortium as a result of her husband's injuries. For simplicity, the Court will use the singular "Plaintiff," to refer to Roger Hoschar.

Philip Sporn power facility ("Sporn facility") in Mason County, West Virginia. The Sporn facility was owned and operated by Defendant Appalachian Power Company ("APC"). Approximately five months of Plaintiff's time there was spent working in and around the Unit 5 precipitator at the Sporn facility.[2] Hoschar Dep. at 111, ECF No. 104-1. Unit 5 is a 213-foot-high open-air structure composed of steel plates reinforced by steel girders at regular intervals. APC Ans. to Interr. No. 13, Ex. F, ECF No. 88-1; Photos of Unit 5, Exs. G-2, G-3, ECF No. 88-1. The horizontal girders are approximately eight inches wide and two and one half inches deep (creating "channels"), with drainage holes at regular intervals. Photos of Unit 5, Exs. G-2, G-3, ECF No. 88-1. Plaintiff's work on the Unit 5 precipitator included patching the large ducts leading into and out of the precipitator by welding sheets of steel over corroded portions, to prevent leakage of gas and ash. Hoschar Dep. at 119-20, 124, ECF No. 104-2. To access the parts of the structure needing repair, Plaintiff and his co-workers were elevated in a "pick," which is an elevated platform similar to those used by window washers.

    Because Unit 5 is an outdoor facility, birds (particularly pigeons) sometimes perch on the supporting girders and leave their droppings behind. *Id.* at 118-19. APC implemented several measures to reduce the birds' presence, including the use of a chemical to irritate the birds' feet when they landed on the beams, placing an animated owl decoy to scare the birds away, and playing recordings of bird distress calls. APC Ans. to Interr. No. 10, Ex. F, ECF No. 88-1. Nonetheless, Plaintiff observed accumulations of bird manure mixed with ash deposits in the channels, as high as four inches. Hoschar Dep. at 131, 144-45, ECF No. 104-2. To prepare the area for welding, Plaintiff cleared the manure out of the channels using different methods, such as

---

[2] A precipitator is a structure that removes ash and other particles from the gasses produced by burning coal. APC Mot. Summ. J. at 4, ECF No. 89.

his gloved hands, a wire brush, and an air hose. *Id.* at 134. Clearing away the manure resulted "in aerosolized dust particles which accumulated on his person and clothing." Compl. ¶ 2. Each time Plaintiff performed his work on the pick and cleaned his tools, he wore a protective respirator. Hoschar Dep. at 232-35, ECF No. 88-1.

In 2009, after Plaintiff had left his work at the Sporn facility, doctors performed a routine chest x-ray in preparation for unrelated knee surgery. *Id.* at 156. Doctors observed a four-centimeter mass in Plaintiff's lung. *Id.* Believing it could be cancerous, Plaintiff's physician recommended that Plaintiff undergo surgery to remove the portion of his lung containing the mass. Guberman Dep. at 37, Ex. B, ECF No. 88-1; Ducatman Dep. at 44, Ex. C, ECF No. 88-1. Accordingly, doctors removed that portion of Plaintiff's lung. Biopsy results on the mass ultimately revealed that it was not cancer, but rather benign histoplasmosis. Guberman Dep. at 37, ECF No. 88-1. Because the mass was removed and there was no evidence of active histoplasmosis elsewhere in his body, Plaintiff was not treated for histoplasmosis. Ducatman Report at 1, Ex. L, ECF No. 88-1.

Histoplasmosis is an infectious disease caused by inhaling the spores of the *Histoplasma capsulatum* fungus. National Institute for Occupational Safety and Health, *Histoplasmosis: Protecting Workers at Risk, Revised Edition* at 1, Ex. S, ECF No. 88-1. The disease cannot be transmitted from an infected person or animal to someone else. *Id.* Histoplasmosis generally affects a person's lungs, and the vast majority of people with the disease have no ill effects and may not even realize they have the disease. *Id.* The minority that does exhibit ill effects presents flu-like symptoms. *Id.* *H. capsulatum* grows in soil and the proportion of people infected by the fungus is particularly high in the Ohio River Valley region, where the soil is rich in nitrogen. *Id.* at 3. The organism can be carried on the wings, feet, and beaks of birds and infect soil under

3

roosting sites or manure accumulations inside or outside buildings. *Id.* Fresh bird droppings on surfaces like windowsills and sidewalks, however, have not been shown to present a health risk for histoplasmosis because birds themselves do not appear to be infected by the fungus. *Id.* Bird manure rather acts as a nutrient source for *H. capsulatum* that is already present. *Id.* Those at risk of developing histoplasmosis are those present near activities where material contaminated with *H. capsulatum* becomes airborne. *Id.* at 4.

Plaintiff and his wife filed the instant suit on January 31, 2011, alleging that he developed histoplasmosis after being exposed to aerosolized bird manure while working at the Sporn facility.[3] First, Plaintiff asserts a common law negligence claim against APC. Plaintiff claims that as owner of the Sporn facility, APC breached a duty to provide a safe place to work. Specifically, Plaintiff alleges that APC failed to post health risk warnings concerning the accumulations of bird manure at the plant; failed to notify workers of the health risks associated with bird manure and histoplasmosis; and failed to clean and remove accumulated bird manure prior to Plaintiff beginning the repair work. Compl. ¶¶ 10-13.

Second, Plaintiff asserts a claim against ICI pursuant to the West Virginia's Workers' Compensation Act, W. Va. Code § 23-4-2(d)(ii). That provision subjects employers to liability for a plaintiff-employee's injury if the employer "acted with deliberate intention" to "produce the specific result of injury or death to an employee." W. Va. Code § 23-4-2(d)(2). In this case, Plaintiff claims that ICI had actual knowledge that accumulations of bird manure were present at the worksite and that there was a high degree of risk of injury from histoplasmosis. Compl. ¶ 16. Additionally, Plaintiff contends that ICI violated industry safety standards and thus "intentionally

---

[3] Plaintiffs originally filed this action in the Circuit Court of Mason County, West Virginia. Defendants removed the case to this Court based on diversity jurisdiction. The Court has previously concluded that jurisdiction is proper. ECF No. 10.

4

exposed [him] to a working condition in which he was not educated to the dangers of bird manure . . . ." *Id.* ¶¶ 17, 22. Plaintiff's wife asserts claims for loss of consortium.

This matter has been fully briefed and is ripe for disposition. Accordingly, the Court now turns to the parties' arguments and applicable legal standards.

## II. ANALYSIS

### A. Summary Judgment Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

**B.     Appalachian Power Company's Motion for Summary Judgment**

To prevail on a negligence claim based on premises liability in West Virginia, a plaintiff must show: (1) the owner or occupier owed a duty to the person injured; (2) that duty was breached; and (3) the breach of the duty caused (4) an injury.  *Senkus v. Moore*, 535 S.E.2d 724, 727 (W. Va. 2000).  APC argues that Plaintiff failed to meet his burden with respect to the duty and causation elements.  ECF No. 89 at 8.  The Court will first address whether APC owed Plaintiff a duty regarding the risk of histoplasmosis.

The West Virginia Supreme Court of Appeals has abolished the licensee/invitee distinction for the duty owed by a landowner.  *Mallet v. Pickens*, 522 S.E.2d 436, at 446 Syl. pt. 4 (W. Va. 1999).  Consequently, for both types of plaintiffs, "[t]he ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised.   The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?"  *Id.* at 446 (citing *Sewell v. Gregory*, 371 S.E.2d 82, Syl. pt. 3 (W. Va. 1988)); *see also Neely v. Belk, Inc.*, 668 S.E.2d 189, 198-99 (W. Va. 2008) (citation omitted).  "An employer owes a duty to provide a reasonably safe place to work to employees of independent contractors who are on the premises. This duty includes the duty to warn of latent defects existing before the work is started that are known to the employer, but are not readily observable by the employee."  *Pasquale v. Ohio Power Co.*, 418 S.E.2d 738, 751 (W. Va. 1992).

Here, the relevant question is: did APC have actual or constructive knowledge that the bird manure on the Unit 5 precipitator presented a risk of histoplasmosis?  Plaintiffs acknowledge that they "must prove that APC had actual or constructive knowledge" of the histoplasmosis risk. ECF No. 103 at 18.  Plaintiff relies exclusively on a publication of the National Institute for

6

Occupational Health and Safety ("NIOSH publication") to argue that APC had knowledge of a danger of histoplasmosis, which gave rise to a duty owed to Plaintiff. In 1997, the National Institute of Occupational Safety and Health published a document called *Histoplasmosis: Protecting Workers at Risk*, which was revised in December 2004. *See* APC Mot. Summ. J., Ex. S, ECF No. 88-1. The NIOSH publication was available on the website of the Occupational Safety & Health Administration during the time Plaintiff worked at the Sporn facility, specifically in 2006. *See* OSHA Website, Ex. 10, ECF No. 102-10; Neill Dep. at 77, ECF No. 102-9. Plaintiff argues that the contents of this publication, which discusses the disease, its cause, and protective measures for those at risk, gave rise to a duty by APC towards its contractors. The Court concludes that Plaintiff has not satisfied his burden of demonstrating that APC breached a duty owed to Plaintiff.

First, Plaintiffs have offered no evidence that APC or any of its employees had actual knowledge of the NIOSH publication, or knowledge from any other source that *H. capsulatum* spores are associated with accumulations of bird manure and can lead to histoplasmosis. Two APC employees at the Sporn facility—Jeffrey Atkinson, a maintenance supervisor, and John Chaney, an assistant steam process owner—testified that they had received no training or instruction from any source about histoplasmosis. Atkinson Dep. at 49-50, Ex. H, ECF No. 88-1; Chaney Dep. at 82, Ex. E, ECF No. 88-1. The only evidence of actual knowledge that Plaintiffs provide is actual knowledge that birds were present at the Sporn facility—not actual knowledge of the associated presence of *H. capsulatum*. APC does not contest that it knew about the presence of birds at the Sporn facility; it acknowledges employing certain measures to keep them away. APC Ans. to Interr. No. 10, Ex. F, ECF No. 88-1; Atkinson Dep. at 24-25, Ex. 5, ECF No. 99-5.

Mere knowledge of the presence of birds and their droppings, however, does not imply knowledge of the presence of *H. capsulatum* spores.  APC cites several supporting cases that bear striking resemblance to the case here.  In *Henderson v. Volpe-Vito, Inc.*, No. 266515, 2006 WL 1751832 (Mich. Ct. App. June 27, 2006), a premises liability action in Michigan, the plaintiff sued the owner of a recreational park for injuries associated with histoplasmosis.  She claimed to have contracted the disease as a result of goose droppings at the park.  The court determined that the defendant's acknowledgment of the presence of geese did not "attenuate into an implied knowledge of the fungus, the spores and the dangerous condition of defendant's land." *Henderson*, 2006 WL 1751832, at *3-4.  Similarly, the Eighth Circuit found that actual knowledge of histoplasmosis and its association with bird droppings did not equate to knowledge that the defendants knew or should have known that their attic would contain spores of the fungus and present a risk to the plaintiff, whom they had hired to clean their attic.  *Mowry v. Schmoll*, 441 F.2d 1271, 1273 (8th Cir. 1971) (affirming the district court's granting a directed verdict for defendants).  APC's actual knowledge of the presence of birds, therefore, did not make foreseeable any risk of contracting histoplasmosis from working at the Unit 5 precipitator.

Second, the Court concludes that Plaintiffs have not sufficiently demonstrated that APC had the requisite constructive knowledge of the histoplasmosis risk.  Plaintiffs argue that APC had constructive knowledge of the risk of histoplasmosis from bird manure because of the NIOSH publication.  While Plaintiff asserts that "NIOSH has disseminated its Histoplasmosis Guidelines through various means," ECF No. 103 at 9, he relies almost exclusively on the OSHA website as

being the source of constructive knowledge, *id.* at 8-10, 18-19.[4] Therefore, Plaintiff's argument goes, the risk of histoplasmosis was foreseeable and gave rise to a duty to exclude the birds and their droppings from the Unit 5 precipitator, and a duty to warn Plaintiff of the manure and risks of histoplasmosis. ECF No. 103 at 16.

The NIOSH publication describes the *H. capsulatum* fungus, where it can be found, and the associated risk of histoplasmosis. Plaintiffs specifically direct the Court's attention to one statement in particular: "The organism can be carried on the wings, feet, and beaks of birds and infect soil under roosting sites or manure accumulations inside or outside buildings." ECF No. 103 at 19; NIOSH Publication at 3. This statement and other portions of the NIOSH publication, Plaintiffs contend, should have put APC on notice that the accumulations of bird manure at the Unit 5 precipitator "were hazardous and likely to contain the histoplasmosis fungus." ECF No. 103 at 19. Yet, statements within the NIOSH publication cannot serve to put APC on notice if APC had no reason to be aware of the existence of the publication.

In this case, the mere existence of the NIOSH publication and its availability on a government website is insufficient to charge APC with constructive knowledge of the histoplasmosis risk. Constructive knowledge is "knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." Black's Law

---

[4] In addition to the NIOSH publication already referenced, the NIOSH website cited by Plaintiffs indicates that its histoplasmosis research results have been disseminated through: (1) two Health Hazard Evaluation reports (these reports, one for a Catholic Church in Indiana, and the other for a building in Florida, bear the disclaimer that the report and "any recommendations made herein are for the specific facility evaluated and may not be universally applicable"); (2) two peer-reviewed scientific papers published in *The Pediatric Infectious Disease Journal* and *Applied Occupational and Environmental Hygiene*; (3) an industry trade journal paper (*Poultry Grower News*); (4) a fact sheet; (5) an article in the Center for Disease Control's *Morbidity and Mortality Weekly Report*; and (6) presentations at three industrial hygiene conferences. In their opposition brief, Plaintiffs do not detail these methods and do not argue that APC should have had constructive knowledge based on any of these specific documents.

9

Dictionary (9th ed. 2009). Under these circumstances, Plaintiff has not shown that using reasonable care, APC should have known about the histoplasmosis risk, such that the law should attribute such knowledge to APC. Plaintiffs claim that the NIOSH guidelines have achieved "general acceptance" based on the following information on a NIOSH website:

> The NIOSH recommendations on preventing histoplasmosis have been adopted by other agencies and organizations, including: Laborers' Health and Safety Fund of North America (A6-128); Clemson University Research Medical Surveillance Program (A6-129); Defense Supply Center Richmond, Defense Logics Agency, Hazardous Technical Information Services (A6-130); StaffScapes Professional Employer Organization (A6-131); Korean Radiological Society (A6-132); and New Jersey Department of Health and Senior Services, Division of Epidemiology, Environmental, and Occupational Health, Public Employees Occupational Safety and Health Program (A6-133). The new RDRP NIOSH publication on protecting workers against histoplasmosis is cited on the OSHA Respiratory Protection Hazard Recognition Web page (A6-134). The CPWR electronic library of construction occupational safety and health replicates verbatim "Histoplasmosis: Protecting Workers at Risk" (revised edition) in both English and Spanish (A6-135, A6-136).

ECF No. 103 at 9 (citing http://www.cdc.gov/niosh/nas/rdrp/ch6.5.htm). APC is not listed among these organizations, nor do Plaintiffs offer proof that APC is a member of any of the organizations that have adopted the guidelines. Plaintiffs offer no evidence that the NIOSH publication is authoritative in the power industry, or that any other applicable statutes or regulations require it to be aware of the histoplasmosis risk. *See* Neill Dep. at 77, 121-22, Ex. A, ECF No. 88-1 (Plaintiff's industrial hygiene expert testifying that OSHA has no regulation regarding histoplasmosis and no other statutes or regulations require facilities to take actions regarding bird manure to prevent histoplasmosis).

Furthermore, as APC argues in its motion, others in Plaintiff's own industry were unaware of any relationship between bird manure, *H. capsulatum*, and histoplasmosis. While the

10

knowledge of others is not dispositive of the knowledge attributed to APC regarding histoplasmosis, it is nonetheless useful as an indication of whether knowledge is so common that APC should have known about the risk. The Boilermakers Union, of which Plaintiff was a member, did not provide training or instruction regarding histoplasmosis risks. King Dep. at 14-15, Ex. P, ECF No. 88-1. Nor did any union members file complaints with the union related to histoplasmosis generally, or at the Sporn facility specifically. *Id.* at 19-20. Leadership of ICI, the independent contractor that employed Plaintiff, similarly had no experience with histoplasmosis prior to Plaintiff's condition. *See* Hieronymous Dep. at 120-21, Ex. I, ECF No. 88-1; Landis Dep. at 126, Ex. R, ECF No. 88-1. A safety resource employee at ICI testified regarding histoplasmosis that "[t]here's never been a complaint about it by the employee, by the union hall, by the foreman, anybody. I've never been contacted about a problem or a complaint about histoplasmosis on any job site." Landis Dep. at 132-33, ECF No. 88-1. Taken together, the evidence from APC, the union, and ICI shows no indication that knowledge of *H. capsulatum* and histoplasmosis was widespread even in Plaintiff's own industry and therefore there is insufficient evidence that APC, as a premises owner, had constructive knowledge of the risk.

Because the risk of Plaintiff contracting histoplasmosis was not reasonably foreseeable to APC, the Court concludes that Plaintiff has not produced evidence sufficient to demonstrate that APC violated a duty owed to Plaintiff. There is no genuine issue of material fact as to APC's knowledge regarding the presence of *H. capsulatum* spores and the related risk of histoplasmosis at the Unit 5 precipitator. Plaintiff cannot satisfy the first element of its negligence claim against APC and it is thus unnecessary for the Court to evaluate the other elements. Therefore, the Court **GRANTS** Defendant APC's Motion for Summary Judgment regarding Roger Hoschar's claim.

Because Judy Hoschar's claim for loss of consortium is dependent upon Roger Hoschar's claim, the Court also **GRANTS** summary judgment in favor of APC on the loss of consortium claim.

### C.     Industrial Contractors, Inc.'s Motion for Summary Judgment

Generally, an employer participating in West Virginia's workers' compensation system is immune from suit by employees who suffered injury or death on the job.  W. Va. Code § 23-2-6. There is an exception to this general immunity where an injury to an employee occurs as a result of "the deliberate intention of his or her employer to produce the injury or death."  W. Va. Code § 23-4-2(c).    There are two ways a plaintiff may establish "deliberate intention."  First, a plaintiff can show that the employer "acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee."  W. Va. Code § 23-4-2(d)(2)(i).  Second, a plaintiff can establish a deliberate intention claim by showing all of the following elements:

> (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;
>
> (B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;
>
> (C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;
>
> (D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

> (E) That the employee exposed suffered serious compensable injury or compensable death as defined in section one, article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

W. Va. Code § 23-4-2(d)(2)(ii); *see also* Syl. pt. 2, *Mayles v. Shoney's, Inc.*, 405 S.E.2d 15 (W. Va. 1991).

Plaintiff seeks to establish his deliberate intention claim under West Virginia Code § 23-4-2(d)(2)(ii). To survive the motion for summary judgment, Plaintiff "must make a prima facie showing of dispute on each of the five factors." *Marcus v. Holley*, 618 S.E.2d 517, 529 (W. Va. 2005) (quoting *Mumaw v. U.S. Silica Co.*, 511 S.E.2d 117, 120 (W. Va. 1998)). If ICI "establish[es] that no material issue of fact is in dispute on any one of the five factors, and such a finding is in favor of the defendant, summary judgment must be granted to the defendant." *Mumaw*, 511 S.E.2d at 122. ICI asserts that Plaintiff has failed to prove a material issue of fact as to any of the five elements of § 23-4-2(d)(2)(ii). The Court concludes that at least for element (C), Plaintiff has failed to prove a genuine dispute of material fact. Consequently, even assuming the other elements are satisfied, summary judgment is nonetheless appropriate.

As a preliminary question, the Court must first identify the "specific unsafe working condition" of which Plaintiff complains, because each of the five elements requires the Court to analyze Defendant's knowledge of, and actions related to, the alleged specific unsafe working condition. Here, Plaintiff claims that the specific unsafe working condition was requiring Plaintiff to work in an area with "large accumulations of bird manure" without: (1) warning of the risk of histoplasmosis; (2) removing the bird manure; and (3) instructing workers about safe methods of cleaning the manure and providing the appropriate equipment to do so. Compl. ¶ 15.

Element (C) of the five-part deliberate intention statute requires Plaintiff to demonstrate that the alleged specific unsafe working condition violated either: (1) "a state or federal safety

13

statute, rule or regulation;" or (2) "a commonly accepted and well-known safety standard within the industry or business of the employer." W. Va. Code § 23-4-2(d)(2)(ii)(C). In drafting this statute, "[t]he legislature apparently has recognized that many industries or businesses observe safety standards whether or not they are the subject of governmental regulation. Subsection (C) takes this into account and permits relief for the violations of such of these safety standards as are 'commonly accepted' and 'well-known.'" *Handley v. Union Carbide Corp.*, 804 F.2d 265, 273 (4th Cir. 1986).

Plaintiff claims that in this case, ICI violated a commonly accepted and well-known safety standard, rather than a statute, rule, or regulation. ECF No. 100 at 21-23. Indeed, Plaintiff's industrial hygiene expert acknowledged that "there is no enforceable regulation in terms of a specific standard for histoplasmosis." Neill Dep. at 121-22, Ex. 9, ECF No. 99-9. Therefore, Plaintiff again relies exclusively on the existence of the NIOSH publication, arguing that it constitutes a "commonly accepted and well-known safety standard," which ICI violated. ECF No. 100 at 21-23.

The Court finds that Plaintiff has not demonstrated that the NIOSH publication is commonly accepted or well known within the industry, for many of the same reasons articulated in the discussion of APC's Motion for Summary Judgment *supra*, at Section II.B. Plaintiff argues that because the publication was available to the public on OSHA's website on a page titled "Respiratory Protection: Hazard Recognition," it was well known and ICI should have been aware of its recommendations. *See* ECF No. 100 at 22-23; OSHA Website, Ex. 10, ECF No. 102-10. The fact that the NIOSH publication was available online, however, does not establish that it was

commonly accepted or well known throughout ICI's industry.[5] Furthermore, OSHA's website describes the NIOSH publication and other documents provided there as "references [that] aid in recognizing and evaluating respiratory hazards in the workplace." *Id.* It thus appears to the Court that OSHA considers the NIOSH publication to be a useful "reference," rather than a definitive industry standard.

Plaintiff again attempts to demonstrate common acceptance of the NIOSH publication by showing that NIOSH's website notes that the "recommendations on preventing histoplasmosis have been adopted by other agencies and organizations." ECF No. 100 at 22 (citing http://www.cdc.gov/niosh/nas/rdrp/ch6.5.htm). Plaintiffs have offered no evidence, however, that ICI is a member of any of the six listed organizations that adopted the recommendations. Additionally, the fact that these few organizations in various industries have specifically adopted the recommendations but others have not indicates that the NIOSH publication has not been commonly accepted within ICI's industry. Nor does Plaintiff's industrial hygiene expert, Harry Neill, testify that the guidelines are commonly accepted and well known. Neill cited the NIOSH publication repeatedly in his expert report and deposition testimony. *See* Neill Dep. at 18, 23, 24-25, 52, 86-87, 106, ECF No. 99-9 (referring to the "guidance from NIOSH" and relying on the guidelines to form his opinion). He referred to the publication as "guidelines," but never stated that the construction industry or boilermaker industry has adopted the guidelines, or that the guidelines are even well known throughout those industries. Without evidence of common

---

[5] The parties disagree as to the relevant "industry" for purposes of the deliberate intention statute. ICI contends that the relevant industry is boilermaking, which is what Plaintiff was hired to do at the Sporn facility, while Plaintiff contends that the more general construction industry is the relevant industry. The distinction makes no difference here, because the Court concludes that Plaintiff has offered insufficient evidence that the NIOSH publication recommendations are well known or commonly accepted in either industry.

15

acceptance, the Court concludes that Plaintiff cannot make out a prima facie claim under the deliberate intention statute.

At the end of oral argument on this matter, Plaintiff's counsel cited a 1981 decision of the Occupational Safety Health Review Commission in which the Commission determined that an employer committed a serious violation of OSHA's regulations regarding respiratory protection. *Mahone Grain Corp.*, 10 BNA OSHC 1275, 1981 WL 18939 (No. 77-3041 1981). Although Plaintiff did not cite this decision in any of the summary judgment pleadings, the Court will nonetheless address its applicability and explain why it is not persuasive here.

In that case, the employer was cited for failing to establish and maintain a respiratory protection program after several employees developed histoplasmosis while cleaning and refurbishing a grain elevator. Specifically, the Administrative Law Judge affirmed a citation for violating several subparts of 29 C.F.R. § 1910.134, which requires employers to establish and maintain a respiratory protection program, provide respirators to employees "when such equipment is necessary to protect the health of the employee," and to keep respirators in proper working condition. The employer there had no respiratory program, did not provide all its employees with respirators, and did not keep respirators in proper working condition. *Mahone Grain Corp.*, 1981 WL 18939, at *1 n.2. This case, however, does not support Plaintiff's assertion that he has satisfied element (C) of the deliberate intention statute.

Title 29 C.F.R. § 1910.134 is a regulation that requires safe equipment and working conditions generally. It is not a regulation that is "specifically applicable to the particular work and working condition involved." W. Va. Code § 23-4-2(d)(2)(ii)(C). The regulation is not specifically applicable to the potential hazard of accumulated bird droppings and histoplasmosis. Instead, it generally requires employers to develop and maintain a respiratory protection program

16

and provide respirators to workers. Even if ICI violated this regulation—a question not before this Court and which the Court need not reach—such a violation would not satisfy element (C) of the deliberate intent statute.[6]

To summarize, the Court concludes that Plaintiff has not demonstrated that the NIOSH publication constitutes a "commonly accepted and well-known safety standard within the industry." The mere availability of the publication on a government website does not equate to the industry's acceptance of the guidelines therein. The deliberate intention statute requires Plaintiff to show that the specific unsafe working condition was a violation of a commonly accepted and well-known safety standard within the industry. Plaintiff has not made such a showing in this case. Consequently, the Court **GRANTS** summary judgment for Defendant ICI on both Plaintiffs' claims.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motions for Summary Judgment. In accordance with the accompanying Judgment, the Court **ORDERS** that Judgment be entered in favor of Defendants Appalachian Power Company and Industrial Contractors, Inc., and that this case be **DISMISSED** and stricken from the docket of this Court. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: November 30, 2012

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[6] Unlike the employer in *Mahone Grain Corp.*, ICI did have a written respiratory protection program in place. *See* Neill Dep. at 116, ECF No. 99-9. Additionally, Plaintiff acknowledges that ICI required him and other workers to wear a respirator and other protective gear while performing their work. Hoschar Dep. at 120-22, Ex. 8, ECF No. 90-8.